May it please the Court, my name is Douglas Nelson on behalf of the petitioner. It's clear in this case that the Board made an enormous mistake when it failed to obey its own order. The Board of Immigration Appeals ordered the judge to take new evidence on country conditions, and the case was remanded to the judge for that purpose. The judge set a filing deadline so that the petitioner and the government could supplement the record with new country conditions. But before that deadline arrived, the court issued another order stating that it was going to deny all relief and affirm its prior decision. That was in direct violation of the Board's order. And so the judge, though, knowing that this was a questionable decision that he made, certified the case to the Board. And to everyone's surprise, I believe, the Board, instead of following its first order, moved the goalposts. They had set a standard and an order for the judge to take evidence. And when the judge refused to do that, they should have sent the case back to the judge and said, do as we told you to do, follow our order, and take evidence of country conditions. Now, this was a single panel member review, and so it was quite a surprise that the same panel member would completely reverse his own decision. And he gave no justification for changing his decision either. Nothing new that had happened in the interim. But he did. What is our standard of review of what he did? Of what he did? Yes. He changed his mind. He's coming to us from the Board now. I don't think that that decision should deserve much deference, Your Honor, because it's clearly an arbitrary and capricious decision because he moved the goalposts without giving the parties an opportunity to present the evidence that had previously ordered. And it's very important that that evidence make it into the record, because not only has the respondent applied for discretionary relief, but also for the mandatory relief of withholding of removal and protection under the U.N. Convention Against Torture. You see, the judge was saying, I deny this person indiscretion, and I deny him because I find him not credible. But those questions are not important when you're considering withholding of removal or protection under the U.N. Convention Against Torture. Those are mandatory reliefs that if my client were to prove, it's more likely than not, that he would be harmed or tortured in this country, he would receive those reliefs. Now, we tried to make the Board aware of this problem in our motion to reconsider. That motion is not, the decision in that motion is not before this panel. But I put it in the Excellence of Record to show that the Board still refuses to change its position in this matter, and that is simply not correct. Now, I think that question is obvious and that the Court should remand the case so that the Board can correct its arbitrary and capricious decision and allow the Petitioner to add this new evidence. The record is simply stale. The Board knew that when it issued its first order. But let's turn to the question of credibility, because I think that's also very important to this case. I've been doing Chaldean cases for 12 years in the San Diego area, and as a practical matter, what happens is that when these cases return because of new country conditions and there's an outstanding credibility problem, the judges react the same way this judge reacted. I found him not credible the first time. Therefore, I'm not going to take any new evidence. So we want a decision on the credibility also. And I think that we've adequately, well, convincingly demonstrated in our brief that none of the credibility grounds that the judge's decision used are germane to the issue of whether he was persecuted or not. They don't go to the heart of the matter. These minor... So let's say we agree with you. Where are we then? You find that the judge's position, credibility position, is not supported by substantial evidence, that there were reasonable explanations given for these minor inconsistencies. Say we agree with you. Where are we? You remand it to the Board, and the Board will remand it to the judge, and the judge will take new country conditions, because that's what he was ordered to do the first time. That's the best approach for you, isn't it? Yes, sir. And... Well, why don't you start out with your best approach? Oh, I'm sorry. I thought I was getting to that. But that absolutely is our approach, Your Honor. We want a decision on both the Board's arbitrary and capricious decision and a decision on credibility. And do we have to reach the credibility question in this case, or would it be just free legal advice? No, Your Honor. We do want you to reach that, because look what the judge did the first time when the case was remanded for new country conditions. He said, I didn't believe the person the first time, and I denied it at discretion the first time, so I'm not going to change my position. And that's what will happen if we don't have a credibility determination by this Court. The judge will make that decision again. And we think that... Well, gosh, I think that our... I say we agree with you on that. Why do we have to get after the Board? I'm sorry, Your Honor? We agree with you on the credibility. Why do we have to get involved in what the Board did? Well, because the record is stale, and the Board recognized that the first time. I mean, the country conditions, as we showed in our motion to reconsider, showed that 10,000 to 30,000 Christians had fled at that time. The new country report published a month ago says 600,000 Christians have fled the country now. That is very important that that evidence get in the record. That evidence was not allowed by the Board before. And, no, the respondent did not file a motion to reopen, because the judge and the Board in two decisions made it very clear that they're not going to accept this new evidence unless we get a ruling from this Court. But, yes, those new country conditions issued by the Department of State say that 600,000 Christians have now fled. And they dedicate paragraph after paragraph to Muslim terrorist persecution against Christians in that country. So now we are, if allowed the opportunity, in a terrific position to put the class... And we get into a Zeno's Paradox unless the Board changes. Yes, that's correct. And we don't want to fall into the Zeno's Paradox. We want to hit the target. But this young man... Who's paradox? Zeno's Paradox, where the... I've never met the guy. And Avotoba Eliseva, I think, is the decision that talks about Zeno's Paradox. The arrow someday has to hit the target, and we recognize that. The arrow has not hit the target here, because the target was moved by the Board when it changed its own decision. I thought they moved the goalposts. That too. But, that being said... You want to save two minutes for rebuttal? Yes, I will. And, yes, we want to hit the target. But this young man is going back to Iraq. The Department of Homeland Security is not removing anybody to that country at that time, because they cannot. In fact, they haven't removed anybody since the first Gulf War. And certainly after the second action in March 2003, they are not returning persons. Thank you. May it please the Court, Jem Sponzo on behalf of the Respondent. Well, the Chaldeans have been around for a long time, haven't they? You certainly have, Your Honor. They're in the Bible, aren't they? They are. They're biblical people. They are. So why can't we keep them? What is at issue in this case is the very fact of whether Petitioner is, in fact, a Chaldean Christian as he claims. His identity is at issue before this Court. The record does not compel reversal of the adverse credibility reached by the agency. Moreover, as Petitioner acknowledges... Well, you can get a blood sample and send it off to the Smithsonian. They'll give you the answer. He certainly could have. In this case, the two issues are that both the identity documents that are in the record, at pages 330 and 331, themselves are problematic on their face, and Petitioner's testimony regarding how he came to submit these documents is inconsistent, vague, and entirely reasonable for the immigration judge to have looked at that evidence and that testimony and thusly concluded that the very fact of Petitioner's identity was in question. The problem with that argument for me is very bad interpretations here. There are problems all along. If you read the transcript, the interpreter apparently did not get the whole picture as he was interpreting, and the immigration judge seemed to be tremendously hostile throughout in asking question after question after question, at least as I read the record, and maybe you can correct me. The Petitioner didn't seem to even understand what he was being asked, and that dealt with the interpreter, the interpreter himself. Do you have a response to that? Well, I would say that at no point in the record that's before this Court does Petitioner express any concern with the translation, with which he was, the translation services with which he was provided either at his credible fear interview and his proceedings before the immigration judge. Well, I could just tell from reading the transcript that there'd be a question and an answer that didn't respond. Transcripts can be very, very difficult, and very often what transpired in the immigration court itself doesn't necessarily come across on paper. But in this case, the issue of whether the translation ---- That's what we look at, paper. Absolutely. But one would look to see whether a problem in translation had been raised prior to this Court's review of the record that has been submitted. Who represented this gentleman before the immigration judge? I can go back and pull up the name if you'd like. Was it this? No. I wouldn't think so. But, again, he was represented at each phase. There's no part of the proceedings here. A lot of the representation they get is incompetent. But, again, there's been no ineffective assistance of counsel claim set forth in these proceedings. What does appear from the record before this Court is that Petitioner had two separate opportunities to make these submissions, either rehabilitating the adverse credibility finding reached against him to prove his identity or to submit the country conditions information that Petitioner at this juncture asserts is dispositive of his claim. He failed to do so. Instead, Petitioner filed a petition for review with this Court of the Board's September 2nd, 2004 decision and at that same time filed his motion to reconsider, which, by Petitioner's own admission, is not before this Court. Therefore, the issue of country conditions, evidence, information, whatever it might establish, even if Petitioner could prove that he is, in fact, a Chaldean Christian, has not been exhausted for the purposes of this Court's review. It may have been exhausted by the agency at this point, but Petitioner filed that motion to reconsider at the same time he filed this petition for review. Petitioner has further not sought this Court's review of the denial of his motion to reconsider. There's been no petition for review filed at that decision. Similarly, the issue of whether the agency in any way changed the scope of the proceedings with which Petitioner was afforded has not been exhausted. Petitioner did not raise that claim in his appeal to the Board. Well, he raises it here. He says that the BIA remanded it to consider the new country conditions, and the IJ didn't pay any attention to the remand. But again, as I just stated, Petitioner failed both before the immigration judge, after the board's remand, and in the immigration judge's certification to either rehabilitate the adverse credibility finding reached against him or to present this country conditions information. Instead, he waited until the filing of his motion to reconsider. Therefore, the issue of whether it was error for the immigration judge to rely on the unchallenged underlying adverse credibility finding or for the board to adopt and affirm the decision of the immigration judge insofar as he found Petitioner not credible has not been exhausted. Would you correct me if I'm wrong? When it went back to the immigration judge, as I read the record, I thought he said, I'm not going to consider changed country conditions because I just don't believe you, and then sent it back up to the board. Isn't that what he did? I would disagree only insofar as the immigration judge noted that Petitioner's credibility remained at issue and still had not been rehabilitated. And therefore, when the immigration judge was presented with the record returned by the board, which is always appropriate, the board may always, in an abundance of fairness and an abundance of caution, return an issue back to the immigration judge, the immigration judge was presented with the same record that had been before him at the time of his, I believe it was his January of 2002, 2001 decision. Who represented him then? Again, Your Honor, I'm happy to know. Not Nelson. No, I don't believe so. Somebody else. Henri Mendez. What? Henri Mendez was me, Your Honor. Were you? Yes. These are all issues that should have been, Petitioner should have availed himself of those opportunities. Did the immigration judge say, I've been told to consider country conditions. Do you have any offer of proof? I thought he just cut it off by saying, I'm not going to do it because I don't believe him anyway. It's irrelevant. What is the record on that? The record on that is that the immigration judge did review the record that was before him and noted that even after a preliminary hearing to review the board's remand, to review the dates that would be forthcoming, Petitioner made no offer of this evidence, this country conditions evidence or anything to rehabilitate his credibility. That's what was before the immigration judge at the time of his written decision. You just said something, no evidence to rehabilitate his credibility. I'm asking about a chance to offer evidence of changed country conditions, not dealing with his credibility. Correct. Again, Petitioner could have made that offer at the time that the board returned this record to the immigration judge. It's entirely appropriate for the Petitioner to come into immigration court to say, here is this evidence that I would like to offer you. Here is the material that the board has noted might be relevant. Here is my chance to cure what could be a stale record if, in fact, Petitioner is who he says he is. But those issues are all before the court at this time. We're presented with an adverse credibility finding. The record does not compel reversal of that determination. And we're presented with unexhausted issues regarding both the immigration judge's decision to issue a written decision, the board's decision adopting and affirming that adverse credibility finding, and all of this country conditions information that's not before this Court. Thank you. Thank you. All right. Thank you. All right. Your Honor, there is one very important clarification that must be made. I'm sorry, but counsel has misstated the record. At the transcript of page 29, at the remanded removal proceedings, the judge says, but I will afford the parties to submit what they believe is appropriate on changed country conditions, and I'll ask that both parties do that by June 23rd, please. That date never came because on March 31st, he issued an order to sort of find the case back to the board. So when the government counsel says that we had an opportunity to supplement the record with these country conditions, yes, on June 23rd was the deadline to file those documents. But three months prior to that, on March 31st, the judge said, you know, enough with this. I'm confirming my first order and sending it back to the board. I'm going to ignore the board's order to supplement the record with changed country conditions. This I.J.'s problem apparently was that he couldn't tell who the petitioner really is. What is the identification evidence as to who this guy is? In fact, the judge didn't say he didn't believe the person's identity. He just had questions about the identity documents, identity documents which the government had copies of and could have taken to forensics at any time to examine throughout the three hearings, three individual hearings that this petitioner was afforded. And the government never did that. What those documents were, Your Honor, was an Iraqi identity card which was translated and placed in the record. And the second document was a certificate of baptism. And the judge was concerned about that because it was issued in 1998 instead of on the date of the respondent's birth. The petitioner, I'm sorry. And the petitioner said, but Your Honor, I lost the first birth certificate. I needed another one for my driver's license or for other documents, and so I obtained one in 1998. That's why it has a 1998 date for my baptism. Now, that's what his concerns were about the identity documents, and that's it.  And one last point. The respondent testified in the Chaldean language, a language specific to that ethnicity, that only Christians speak in that country, further proof that he is, in fact, a Christian Chaldean seeking asylum in this country. What does it speak, Aramaic? It's akin to Aramaic. They're very close. They understand Aramaic, but it's not a written language. Chaldean is not a written language, but it's very close to Aramaic. Okay. Thank you, Your Honor. Who is Ian Kirk? Savah Younan, who's been in practice for many years. And we didn't raise due process claims in this case because this is par for the course in these cases. All the judges are used to these circumstances, as are the attorneys and the respondents, and it's normal to have these little inconsistencies and errors. So for the judge to go and pick further and further against this respondent because these normal, anticipated bobbles in the translation just went too far is very normal. So thank you, Your Honor. All right. This matter is submitted.
judges: Goodwin, Pregerson, D.W. Nelson